## UNITED STATES v. AUGUSTINE.

### No. 10203.

United States Court of Appeals
Third Circuit.

Reargued April 2, 1951.

Decided May 24, 1951.

Jacob Kossman, David Berger, Philadelphia, Pa., for appellant.

James C. Bowen, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal involves a conviction of the appellant of wilfully attempting to evade his federal income tax for the year 1942. The judgment of conviction was affirmed per curiam in United States v. Augustine, 3 Cir., 1950, 185 F.2d 407. After appellant changed his legal counsel a petition for rehearing was filed and subsequently granted on February 6, 1951. On the rehearing a full appendix was given the Court and new briefs were filed by the appellant and the United States. We proceed to consider the appellant's points in order.

1. Complaint is made that the government called appellant's brother as a witness and the brother refused to testify. It is suggested that this constitutes prejudicial error to the appellant and we are referred to United States v. 5 Cases, etc., 2 Cir., 1950, 179 F.2d 519, 523. We may find ourselves in complete accord with the court's language there and still find no reason for reversal. There is nothing to show here that anyone knew that the defendant's brother would claim privilege, much less that he would blurt out that he had been indicted and refuse to give any testimony at all. We do not consider the fact that the witness was defendant's brother under indictment for a similar crime sufficient to

put the government on notice that he would claim his privilege and refuse to testify. In fact the transcript shows that what the witness did was a surprise to the government's attorney. The court repeatedly instructed the jury that they had nothing to do with any case except that of the defendant before them. There is no basis for reversal upon this point.

2. The appellant complains that two government witnesses were erroneously permitted to state opinions and conclusions. One of these witnesses, Carl F. Wagner, Jr., was a special agent of the Bureau of Internal Revenue. The other, William H. Harrison, was an Internal Revenue agent attached to the Philadelphia office and had been in that occupation since 1922.

The subject-matter of the legal battle in this case involved $236,000 which had come into the hands of the defendant. The prosecution claimed that this money was "a constructive dividend" from the Augustine Construction Co., Inc., owned by the defendant and his brother. If the government's theory was right, defendant had failed to account for income received by him in the year in question. The defense was that this $236,000 was paid out by the defendant as a business expense for the rental of machinery used by the corporation for a job in Bethlehem, Pennsylvania. The $236,000 was represented by fifteen checks in varying amounts and made out in the name of varying payees, none of whom were intended to have an interest in the documents.

The witness Wagner was asked by the prosecutor, " * * * did you in your capacity as the investigating agent make a determination as to the correctness of any of the charges claimed by the Augustine Construction Company in their books?" The witness, over objection, said that he had concluded that the fifteen checks totalling $236,000 "were not allowable expense." ▮ In this the witness was telling what he did and what conclusion he had come to. It is certainly arguable that this is not expert testimony at all, but simply a factual recital giving the basis of the charge by the prosecution that the defendant had wilfully failed to pay the government tax money due it. The government, of course, in such a situation has the burden of proving that income tax was due from the accused for the year involved. Gleckman v. United States, 8 Cir., 1935, 80 F.2d 394; United States v. Schenck et al., 2 Cir., 1942, 126 F.2d 702.

A little later the same witness was asked what, as the result of his determination, the net income of the corporation should have been for the year in question. The witness answered over objection. The trial court would not allow the prosecutor to ask the witness on what basis he made his determination. We do not see the reason for this ruling, but, in any event, it is not one of which the defendant can complain.

Later in the trial the witness Harrison was asked, "On the basis of your own examination of the books of the Augustine Construction Company, what did you determine the earnings or profits of that corporation for the year 1942 was on those books?" This question was answered and then the witness was asked what he determined the earnings and profits should have been for the same year. This question was also answered over objection.

The admission of this testimony is complained of and said to constitute reversible error. Our own decisions in United States v. Michener, 3 Cir., 1945, 152 F.2d 880 and United States v. Ward, 3 Cir., 1948, 169 F. 2d 460 are cited to support the argument. Those two cases were properly decided and we completely adhere to them. But the factual background here is quite different. In those cases the witnesses gave supposedly expert conclusions about factual situations investigated by themselves of which the jury knew nothing. In this case the relevant part of the books of account of the corporation and these fifteen checks around which the controversy turns were before the jury as physical exhibits and the contents had been thoroughly, almost exhaustively, detailed in evidence. Any conclusion the witness reached was based upon facts which were fully before the jury.

▮ We have no doubt that the subject of bookkeeping and income tax returns is properly a matter for expert testimony.

The general test of the admissibility of such testimony is whether it gives needed help. Wigmore, Evidence § 1923 (3d ed. 1940). We think that this is a proper occasion for it if it is believed that it will be helpful. But the witnesses in this case were by no means "usurping" any jury function, whatever that means. And the jury could not possibly have been confused or misled. The judge told them "If all this money was paid to the defendant for the rental of equipment * * * then the government has not proved the basis for any case against this defendant. * * *" Later on he said: "* * * Unless you find that the defendant filed his personal return * * * with the full knowledge and the intent above outlined, you cannot return a verdict of conviction unless you find those facts together with the other matters also outlined above."

All through this case it is as clear as sunlight that the issue is whether the defendant did use this $236,000 for corporation expenses. There was no confusion created in the jury's mind by the experts and there was no error in letting them testify as they did.

3. Defendant's next point is that the trial judge unduly restricted the scope of cross-examination. This is complained of with regard to two witnesses. One of them is the witness Wagner, whose testimony has already been mentioned. We are not impressed by objections to the limitation of cross-examination with regard to this witness. He was asked whether he had testified before the Grand Jury and whether he had investigated the question of the alleged use of the equipment claimed to have been rented by the Augustine Construction Company. It seems to us that neither question is important. The credibility of a witness is of course a proper subject of cross-examination. But there are limits to the extent of the excursions to be allowed on such a voyage of discovery and a trial judge must have considerable discretion in setting them. We see no abuse of that discretion with regard to the witness Wagner.

More serious, however, is the problem in connection with limitation of cross-examination of a witness named Cesare. This man was called as a rebuttal witness by the prosecution. The defendant had testified positively and at length to the effect that this $236,000 in question had been turned over in cash, from time to time, to a man named Peter Valetta. Valetta was said to have rented his own equipment and other equipment which he procured to the Augustine Construction Company for this good-sized job it was doing in Bethlehem. Valetta died about 1943. This witness, Cesare, testified in behalf of the government that Valetta's "financial condition was very, very poor." Cesare said that he was attorney-in-fact for Valetta in the latter's lifetime. He stated that he was to receive a portion of the profits Valetta made and that he never got any such profits. He was executor of Valetta's will.

Cesare was a devastating witness against the defendant. If his story was believed Valetta was a poor man, lived on the ragged edge, was in bad health and made no apparent outlay of large sums of money for anything. Acceptance of this position of Valetta in the business and social world would greatly weaken, if not entirely discredit, defendant's story of payment of $236,000 in cash to him for equipment rental in one year.

When it came to Cesare's cross-examination the witness was asked about Valetta's business in the years 1940 and 1941. The court ruled the inquiry too remote. The witness was asked whether he knew whether Valetta bet on horse races. This was ruled out. He was asked whether he had filed a claim against himself as executor for money due him by Valetta. The objection to this was sustained. He was asked who the beneficiary in Valetta's will was and objection to this question was sustained likewise.

With reluctance we conclude that there was an undue restriction in the cross-examination of this important witness. His credibility was a critical point for the defendant's case. Likewise the unhappy financial situation outlined by the witness in his history of Valetta was open to further development and perhaps some prodding. It is possible, had the inquiry been permit-

ted to widen out, that some of this witness's testimony could have been shaken. If it could, the defendant was entitled to shake it. If this were a collateral point extended cross-examination of the witness would not have been so important. But the heart of the case was whether defendant had paid the money over to Valetta. Cesare's testimony made this appear extremely unlikely. The answers to defendant's questions might have raised the inference that Cesare was mistaken, or deceived by Valetta, or that Cesare was lying about Valetta's financial condition. We conclude that the cross-examination was unduly restricted and that the likelihood of this causing prejudice to defendant necessitates a new trial. Cf. Alford v. United States, 1931, 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624.

4. The defendant complains of the charge given by the trial court on the question of character testimony. The language used is identical with that approved by this Court in United States v. Johnson, 3 Cir., 1947, 165 F.2d 42, 48. Defendant makes a special point of the fact that the court said "If after considering all the evidence in the case, including the evidence of good reputation, there is reasonable doubt as to the guilt of the defendant, you may acquit." The appellant says that "may" should have been "must."

The appellant is right in urging that the word should have been "must." How much force there would be to this point if it were the only point in the appellant's case we do not need to decide. The jury was told, elsewhere, most clearly about the necessity of proof beyond a reasonable doubt. We call attention, however, to the inadvertent error in order that it may be avoided when the case is again tried.

5. Defendant also assigns as error the failure of the trial judge to charge that for a conviction on circumstantial evidence the direct evidence must exclude every reasonable hypothesis of innocence. Cf. United States v. Dolasco, 3 Cir., 1950, 184 F.2d 746, 748. Defendant made no request for such a charge and made no objection before the jury retired to the failure of the court to cover it in its charge. We do not think that the error, if such it was, was so fundamental as to permit our taking notice of it under Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., when defendant failed to meet the requirements of Rule 30 of those same Rules. Cf. Bloch v. United States, 5 Cir., 1919, 261 F. 321, 325, certiorari denied, 1920, 253 U. S. 484, 40 S.Ct. 481, 64 L.Ed. 1025; Carroll v. United States, 8 Cir., 1930, 39 F.2d 414.

For the reason already stated, however, we must, and we repeat reluctantly, order a new trial. The judgment of the District Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.